UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN R THOMAS #551321  ·  CIVIL ACTION NO. 17-cv-0765

VERSUS  ·  JUDGE ELIZABETH E. FOOTE

DARREL VANNOY  ·  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

John R. Thomas ("Petitioner") was charged in Caddo Parish with two counts of aggravated rape and two counts of molestation of a juvenile. A jury returned a unanimous verdict of guilty on all counts. Petitioner was given life sentences on the rape convictions plus six-year sentences on the molestation counts.

The convictions and sentences were affirmed on appeal. State v. Thomas, 36 So.3d 1178 (La. App. 2d Cir. 2010), writ denied, 64 So.3d 212 (La. 2011). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas relief on the grounds that: (1) the trial court erred in admitting videotapes of Gingerbread House interviews of the victims, (2) two motions for mistrial should have been granted based on references to other crimes evidence and Petitioner not testifying, (3) the trial court erred in admitting expert opinion testimony without requiring a pretrial report, and (4) trial counsel was ineffective for not filing a motion to quash the videotaped interviews. For the reasons that follow, it is recommended that the petition be denied.

**Background Facts**

Petitioner lived with his girlfriend, T.W., her eight-year-old daughter, J.B., and her seven-year-old son. Petitioner worked during the day, and T.W. worked at night. After Petitioner got off work, he would often supervise T.W.'s children as well as the children of her friend, T.G.

T.W. came home from work one night and found her daughter, J.B., awake and crying. J.B. said that Petitioner had hurt her, and she motioned toward her vaginal area. J.B. repeated the accusation in front of Petitioner, and T.W. told Petitioner to leave the home.

The next morning, T.W. took J.B. to LSU-HSC, where she was examined by Dr. Farrah Huval. J.B. told Dr. Huval that her mother's boyfriend had placed his "privates" inside of her "privacy," indicating her vagina and anus, approximately ten times. The child's vagina was red and raw, and she tested positive for chlamydia.

Dr. Huval contacted the police, and J.B. soon gave a recorded interview at the Gingerbread House, a facility for the evaluation of abused children. T.W. was not present in the room during the interview. Officer Simmie Brown of the Shreveport Police Department supervised the interview from a separate room and communicated with the interviewer by radio earpiece.

Several days later, J.B. told her mother's friend, T.G., about the abuse. T.G. was concerned because her three daughters spent a lot of time under Petitioner's supervision. She questioned each of them separately, and all three said that Defendant initiated contact with their vaginal areas. C.G., age 13, said that Defendant touched her vaginal area. J.W.,

age 6, said that Defendant put his hands inside her "private" to check if she was clean after her bath. A.G., age 8, said that Petitioner put grease on her "private" and then inserted his penis into her vagina.

T.G. contacted Officer Brown to tell him of her three daughters' allegations. A.G. was examined at LSU-HSC, and it was determined that she had contracted chlamydia and gonorrhea. All three of T.G.'s daughters gave recorded interviews at the Gingerbread House.

Each of the four child victims testified at trial. Their testimony was used to admit the videotaped Gingerbread House interviews of each. The interviews included specific descriptions of the activity committed by Petitioner. Each child testified that her statements in the interviews were accurate. Both mothers also testified.

The jury heard from Dr. Huval about her findings, as well as Dr. Jennifer Rodriguez, who examined J.B. and A.G. Dr. Ann Springer, an expert in pediatrics with a specialty in child abuse medicine, testified about the examination of sexual abuse victims, the likelihood of finding physical damage, and the transmission of sexually transmitted diseases. Carol Hale, a nurse at the jail where Petitioner was housed after his arrest, testified that Petitioner tested positive for chlamydia and was given treatment.

Officer Brown testified about the investigation and his interview of Petitioner, who waived his Miranda rights and made a pretrial statement. Brown said that Petitioner admitted he was a caretaker for T.W.'s two children, but he denied the allegations of abuse and said he thought T.W. was forcing her daughter to make the allegations to "put him

out." He also alleged that it was T.G.'s son who was responsible for the abuse. He declined to voluntarily give a buccal swab DNA sample.

Petitioner did not testify at trial. The defense did call one witness, a woman who said she had a five-month relationship with Petitioner around the same time as the alleged abuse. She said that she and Petitioner twice had unprotected sex, but she did not test positive for any STDs during her annual medical exam.

**Admission of Gingerbread House Interviews**

Louisiana has enacted statutes in an effort to protect certain crime victims from additional intrusion into their lives by allowing for the admission into evidence of a videotaped interview if several requirements were met. The requirements include that no relative was present in the room when the recording was made, there were no leading questions, no attorney for either party was present, the interview is supervised by a law enforcement officer or other designated official, and the person who conducted or supervised the interview is present at the trial and available to testify. La. R.S. 15:440.1, et seq.

Defense counsel objected that there were leading questions in the interviews and that other requirements were not met, but the trial judge admitted the recordings. Defendant argued on direct appeal that the State did not meet its burden of proving that the videotapes complied with the statutory requirements and that he was denied his right to confrontation because the interviewers were not called as witnesses to testify about their credentials. The appellate court held that the State complied with the requirements of the statutes, found any leading questions to be appropriate under the circumstances, and held

that the statutes did not require the interviewers be called at trial. Petitioner made a similar claim in his post-conviction application that the admission of the videotaped interviews violated his confrontation rights and deprived him of a fair trial. The state courts summarily denied the application, with the Supreme Court of Louisiana stating that the claim about the admission of the interviews was repetitive. Tr. 1167-68.

Petitioner's federal petition describes claim no. 1 as a "direct appeal issue" based on the Sixth and Fourteenth Amendment right to confrontation. It asserts that the state court erred in allowing the videotapes into evidence when the legal requirements were not met. Doc. 1-2, p. 8. The heading for a later discussion of claim no. 1 describes it as "Sixth Amendment Confrontation Rights" based on allowing the videotapes into evidence. Petitioner's argument is that the trial court "erred in allowing these tapes into evidence because the neither interviewer testified so their training and qualifications to conduct the interviews were never tested." He adds that "they asked leading questions" and that there are constitutional ramifications to the admission of hearsay.

The State raised potentially viable exhaustion and procedural bar defenses to this argument, but the court may decline to address such defenses if a claim fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995). Addressing the merits is more straightforward, particularly when the state court has addressed the merits of the arguments either on appeal or post-conviction review. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Confrontation Clause, applicable to the states through the Fourteenth Amendment, provides, "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." The states have explored means of protecting that right while also minimizing the intrusion on child victims. In this case, the prosecution employed Louisiana laws that allowed the use of certain videotaped interviews, in conjunction with live testimony from each victim.

The Fifth Circuit reviewed a similar habeas challenge in a Texas case and held that the Confrontation Clause was not violated by the use of the videotape when the victim also testified at trial and was subject to cross-examination about her recorded statements. Carson v. Collins, 993 F.2d 461 (5th Cir. 1993). A Louisiana district court recently applied Carson to deny a similar habeas claim. Hai Duong v. Vannoy, 2018 WL 7982930, *20-21 (E.D. La. 2018). See also Alvarez v. Cain, 2014 WL 5040698, *10-11 (E.D. La. 2014) (counsel had no basis to object to the introduction of taped statement when he had a full opportunity to cross-examine the victim about the allegations of sexual abuse and the victim's statements made to a psychologist in a videotaped statement). The same result is warranted here with respect to any Confrontation Clause claim that generally challenges the admission of the videotaped interviews.

Petitioner's main complaint appears to be that neither interviewer was present at trial to be cross-examined about their qualifications. The state appellate court rejected this claim because the statute only requires that the interview be supervised by one of several

specific enumerated persons, including a law enforcement officer. Officer Brown filled that role, and he was available for cross-examination at trial. The petitioner in Hai Duong made a similar argument that his Confrontation Clause rights were violated because he could not examine the person who conducted the interview. The court rejected the claim because there was no contention the interviewer made any testimonial statements during the interviews. The same is true here. Petitioner has not identified any testimonial statements made by the interviewers. They merely asked questions. Petitioner has not demonstrated entitlement to habeas relief based on the admission of the recorded interviews.

**Denials of Mistrial**

    **A. Another Charge**

Petitioner argues that he is entitled to habeas relief because the trial court denied two motions for a mistrial. The State raised exhaustion and procedural bar defenses, but the court elects to address the claims on the merits. The first motion for mistrial was made after Officer Brown testified about his interview of Petitioner. The prosecutor asked Brown if he arrested Petitioner at the conclusion of the interview. Brown answered, "For another charge." Tr. 659. Defense counsel stated, "Objection," and a bench conference was held before questioning resumed. Tr. 660. Defendant counsel later made a motion for mistrial pursuant to Louisiana Code of Criminal Procedure Art. 770. The trial judge admonished the prosecutor to ensure that police officers and other witnesses not give such responses, but he denied the motion for mistrial and said he believed an admonition to the jury would only afford more attention to the matter. Tr. 699-706.

Petitioner argued on direct appeal that the trial court should have granted a mistrial based on the reference to him being arrested for another charge. The appellate court reviewed state procedural law for mistrials and evidence rules concerning the admission of evidence of other crimes. The court found it "highly unlikely that this comment contributed to the verdict or deprived Defendant of a fair trial." State v. Thomas, 36 So.3d at 1188.

Petitioner's argument on this claim is based solely on whether the state court properly applied state law when it denied the motion. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 112 S.Ct. 475, 480 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. Halprin v. Davis, 911 F.3d 247, 256 (5th Cir. 2018). Estelle rejected a claim that the admission of irrelevant evidence violated a petitioner's due process rights.

The Due Process Clause can provide a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) (it was constitutional error to admit stipulation of defendant's membership in white racist prison gang where that evidence was not relevant to any issue being decided). The challenged evidence must have had a substantial and injurious effect or influence in determining the jury's verdict. Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007). The state court made a finding that the

generic reference to "another charge" was not prejudicial. That quite reasonable finding is entitled to deference under 28 U.S.C. § 2254(d) and bars habeas relief.

### B. Comment on Silence

The second mistrial mater relates to the prosecutor's closing argument. He began by stating that the case came down to credibility. "It comes down to the statement of children against the statement of a defendant." He added that the ultimate question was whether the children "have a right to be believed given the testimony that you heard here this week." Defense counsel immediately objected. Tr. 750-51. Counsel were later allowed to state their reasons for the record.

Defense counsel argued that a mistrial was appropriate because the argument included a reference to the failure of the defendant to testify in his own defense. The prosecutor responded that he was referring to the denial that Petitioner made to Officer Brown when he was interviewed. The trial judge denied the motion. Tr. 794-96. The state appellate court found that it was "clear from the prosecutor's comments" that he was referring to Petitioner's statement to the police, and it did not draw attention to his choice not to testify at trial. State v. Thomas, 36 So.3d at 1188-89.

The Fifth Amendment forbids the prosecution to comment on the silence of the accused. Griffin v. California, 85 S.Ct. 1229 (1965). A Griffin error is subject to harmless error analysis. Chapman v. California, 87 S.C.t. 824 (1967). A habeas court reviewing such a claim much first decide whether under 28 U.S.C. § 2254(d)(1) fair-minded jurists could disagree that a Griffin error occurred. If there is no such room for disagreement, the

Page 9 of 16

court must then decide whether the Fifth Amendment violation was harmless. Gongora v. Thaler, 710 F.3rd 267, 274 (5th Cir. 2013).

The trial court specifically found that the comments were not in reference to a failure to testify, and the state appellate court agreed. That was an entirely reasonable assessment of the record. Petitioner has not shown that it was an unreasonable determination of the facts in light of the evidence presented or that the decision was an unreasonable application of clearly established Supreme Court precedent. See § 2254(d). Habeas relief is not permitted unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Most jurists would agree with the state court's decision in this case, so habeas relief is not permitted on this claim.

**Opinion Testimony**

Dr. Huval's notes of examination of J.B. stated, "no hymen visualized." She conceded at trial that she did not use a colposcope, which is the most accurate tool because of its magnification properties. LSU did not have such a device, but Dr. Jennifer Rodriguez at the Cara Center later examined J.B. with a colposcope and found that her hymen had no tears or scarring. Dr. Rodriguez was asked to testify about the conflict in the findings and the regenerative capacities of tissue. Dr. Ann Springer was qualified as an expert in pediatrics with a specialty in child abuse medicine, and she also testified about the absence of physical damage in most children who have been subjected to sexual abuse. Both testified about how STDs are transmitted.

Defense counsel objected to the lack of a pretrial expert report from either witness. Counsel argued that such a report was necessary to allow examination of the witnesses to determine whether they met the requirements of Daubert v. Merrill Dow Farm., Inc., 113 S.Ct. 2786 (1993) before they were allowed to offer opinion testimony. The State did provide defense counsel, prior to trial, with the curriculum vitae for each witness and copies of the reports from the physical examinations. The trial judge also allowed defense counsel an opportunity to question the witnesses, prior to their testimony and outside the presence of the jury, to ascertain their opinions about the issues at stake.

Petitioner argued on direct appeal that the trial court erred in allowing expert opinion testimony without prior submission of written reports. The appellate court determined that, although the defense was not provided with written reports as contemplated by state law, the error was harmless because the defense was made aware of the opinions, no such expert/opinion reports were ever prepared, the defense was given copies of the clinical reports of the examinations, and the testimony from the physicians "indicated neutral findings, which neither proved nor negated Defendant's guilt." State v. Thomas, 36 So.3d at 1189-90.

This claim was litigated in state court based solely on state law, but Petitioner now presents it as a Fifth Amendment right to be confronted with evidence. The State argues that Petitioner did not exhaust a federal claim and that the claim is subject to a procedural bar, but the court will forgo discussion of those potentially viable defenses and address the merits. First, "[t]here is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 97 S.Ct. 837, 846 (1977). Accordingly, "a claim that a prosecutor

violated state discovery rules simply is not cognizable in federal habeas review." Williams v. Vannoy, 2017 WL 2303511, *9 (E.D. La. 2017).

To the extent Petitioner argues the state court was required to apply Daubert before admitting the testimony, Daubert did not set a constitutional standard for the admissibility of expert testimony. Rather, the case set the standard for the admissibility of scientific evidence in federal trials conducted in federal courts under the Federal Rules of Evidence. Lubom v. Warden, Louisiana State Penitentiary, 2014 WL 940630, *3 (W.D. La. 2014); Schmidt v. Hubert, 2008 WL 4491467, *13 (W.D. La. 2008). Louisiana courts have adopted the Daubert standard as part of Louisiana evidence law, but federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules. Estelle, 112 S.Ct. at 480.

Petitioner makes a brief argument that Kyles v. Whitley, 155 S.Ct. 1555 (1995) mandated that the prosecutor was responsible for information held by other state agencies. Kyles is an application of the Brady rule that the prosecutor has an affirmative duty to disclose evidence favorable to a defendant. There were no expert/opinion reports prepared in this case, so there was no potentially exculpatory evidence possessed by the prosecutor or the physicians that had to be turned over before trial.

**Ineffective Assistance of Counsel**

Petitioner argues that trial counsel was ineffective because he did not file a motion to quash the Gingerbread House videotapes. This claim was presented in a post-conviction application. To prevail on the claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel

performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

The trial court denied the Strickland claim on the merits because the videotapes were admissible. Tr. 1042-44. The appellate court summarily denied a writ with a finding the trial court "did not err" (Tr. 1115), and the Supreme Court of Louisiana denied writs with a summary finding that Petitioner failed to show that he received ineffective assistance of counsel under the standard of Strickland. Tr. 1167-68.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

Petitioner argues that defense counsel was shown the tapes before trial and knew that the videotapes were inadmissible hearsay. This argument fails because a videotape authorized by the statute "is hereby admissible in evidence as an exception to the hearsay rule." La. R.S. 15:440.3. Petitioner next argues that counsel should have objected that

there was no representative of the defense present during the interview, but "[n]o attorney for either party" may be present when the statement is made. La. R.S. 15:440.5(A)(1). Finally, Petitioner argues that counsel should have moved to quash because the interviewers were not going to testify at trial and be available for cross-examination. It is not clear how defense counsel was supposed to know that from watching the tapes before trial. In any event, state law did not require that the interviewers testify.

Furthermore, the State points out that Louisiana law regarding motions to quash does not allow for a motion on the grounds suggested by Petitioner. See La. Code Crim Proc. Arts. 532-534. Had such a motion been filed, it likely would have been denied as procedurally improper, and it certainly would have been denied for the substantive reasons stated above.

The state courts considered all of Petitioner's challenges to the tapes and found them meritless. Counsel, by not raising the challenges pretrial in a motion to quash, did not render ineffective assistance because he was "not required to make futile motions or objections." Garcia v. Stephens, 793 F.3d 513, 525 (5th Cir. 2015), quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990). Counsel vigorously argued a number of challenges to the videotapes at trial and on appeal, but the arguments just were not successful. The state court's denial of this post-conviction claim was not an objectively unreasonable application of Strickland, so habeas relief is not permitted on this final claim.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of July, 2020.

_____
Mark L. Hornsby
U.S. Magistrate Judge